UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| QUINTIN DAVIS,           ) | |
| ) | |
| Petitioner          ) | |
| ) | |
| vs.           ) | |
| ) | Case No. 4:24-cv-00754-AGF |
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Respondent.        ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Quintin Davis's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  On June 30, 2023, Petitioner pled guilty to one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) and 18 U.S.C. § 924(a)(1)(B).  The Court accepted Petitioner's plea and, on October 3, 2023, the Court sentenced Petitioner to 60 months' imprisonment.

In his pro se motion under § 2255, Petitioner claims ineffective assistance of counsel and prosecutorial misconduct.  Petitioner alleges that his plea counsel was ineffective for advising Petitioner to take a plea deal despite the fact that the firearm at issue was (1) not test fired prior to the criminal complaint and indictment, and (2) that this evidence was not turned over to Petitioner during the plea negotiation.  Petitioner alleges prosecutorial misconduct based on similar grounds, arguing that the prosecutor violated his due process and speedy trial rights by (1) failing to turn over discovery material related to the test fire and (2) providing a misleading affidavit in support of the

criminal complaint, which stated that the handgun was test fired and confirmed to operate as designed. As the record conclusively demonstrates that Petitioner is not entitled to relief, the Court will deny Petitioner's motion without a hearing.

## BACKGROUND

### Criminal Proceedings

Petitioner was charged by criminal complaint on April 27, 2020, with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *United States v. Quintin Davis*, Case No. 4:20-cr-00235-AGF.[1] He was indicted on this same charge on May 20, 2020. Petitioner moved to suppress the firearm that was the subject of the indictment, arguing that it was unlawfully seized. The Court adopted the Magistrate Judge's Report and Recommendation and denied that motion on June 6, 2023. Crim. ECF No. 134.[2]

On or about June 30, 2023, Petitioner waived prosecution by indictment and pled guilty to a single-count superseding information charging him with possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) and 18 U.S.C. § 924(a)(1)(B). In exchange for his guilty plea, the Government agreed that no

---

[1]  References to Petitioner's criminal case are designated as "Crim. ECF No. ___."

[2]  Petitioner does not reference or challenge the Court's ruling on the motion to suppress as part of his current motion to vacate. Nor does Petitioner challenge other pretrial rulings, including the Court's decision to vacate the trial setting in light of a motion to dismiss the indictment based on *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Court had not yet ruled on Petitioner's motion to dismiss, nor reset the trial date, by the time Petitioner pled guilty to the superseding information.

further prosecution would be brought relative to Petitioner's then known violations of federal law arising from his possession of the firearm at issue.

As part of the guilty plea signed by both parties (Crim. ECF No. 142), Petitioner stipulated to the following facts. On February 23, 2020, Petitioner possessed a defaced firearm within the City of St. Louis and the Eastern District of Missouri. On that day, officers from the St. Louis Metropolitan Police Department responded to multiple reports of a shooting in south St. Louis. Police arrived at the scene of the shooting to discover Petitioner's 2002 Buick in the middle of the street with significant ballistic damage and the engine running. Shortly thereafter, Petitioner contacted police and reported that he was the victim of a shooting. Petitioner claimed he was driving his vehicle when a masked and hooded figure stepped out of the gangway and shot at him with an assault rifle. Petitioner then fled on foot to a friend's apartment, from which he contacted police.

After taking his statement, police began to give Petitioner a ride home. Despite living approximately six miles away from the scene of the shooting, Petitioner requested that he be let out only blocks away from the scene of the shooting, stating that he would walk home. Instead of walking home, Petitioner returned to the scene of the shooting and told police that he needed to retrieve his cellphone and other items out of his vehicle.

Meanwhile, police were still processing the scene of the shooting. When police began to photograph Petitioner's vehicle, they noticed a .22 caliber handgun on the driver's seat, adjacent to the center console, between the belt buckle and back of the seat. Police lawfully seized the firearm, which appeared to be defaced. Petitioner had

previously admitted that the vehicle was his and the license plate and VIN were both registered in his name.

Upon further examination, firearm experts determined the handgun was capable of expelling a projectile by the action of an explosive and was therefore a "firearm" as defined under federal law. Experts also determined that the handgun was manufactured outside the state of Missouri and therefore had traveled across state lines and in interstate commerce prior to or during Petitioner's possession. Lastly, the handgun was confirmed as defaced with the serial number removed.

As noted above, Petitioner waived his right to prosecution by indictment and entered into a plea agreement on June 30, 2023. During the change-of-plea hearing, the Court held the following discussion with Petitioner under oath regarding the test firing report of the weapon:

> Court: Now I'm going to summarize the information in this part of the plea agreement, and when I do that I want you to listen carefully to me because when I'm done I'm going to ask you if everything I say is true; okay?
>
> [Petitioner]: Yes, ma'am.
>
> Court: And you understand, [Petitioner], I only want you to say it's true if it is true. I don't want you to say it's true just because I'm the one asking you the questions or because you have decided you want to get this plea over with. Can you and I agree to that?
>
> [Petitioner]: Yes, ma'am
>
> Court: …and that firearm was examined by an expert and determined to have been manufactured outside the state of Missouri, and, therefore, it had to have traveled across state lines and in interstate commerce either before or during the time you possessed it. And it does meet the definition of a "firearm" under federal law. And the -- it was also confirmed that the firearm was defaced with the serial number removed. And when the expert tried to restore the serial number, five of the seven digits were restored, but the sixth and seventh

4

remained unreadable even after their attempt at restoration. And in connection with this plea, you are admitting that you knowingly possessed that firearm and that at the time you possessed it you knew that the serial number was, in fact, defaced. Now, have you heard everything that I said, sir?

[Petitioner]: Yes, ma'am.

Court: Is everything I said, in fact, true?

[Petitioner]: I'm not sure of that.

Court: You're not sure of that?

[Petitioner]: No.

Court: What parts are you not sure of?

[Petitioner]: Upon litigating this case with my attorney —

[Petitioner's Counsel]: If I can have just one moment. If I can consult with him.

Court: You may.

([Petitioner and counsel] conferring.)

[Petitioner's Counsel]: Judge, I think that the issue here was—is that while we did receive a firearm report, I don't think we ever actually received an examination stating that it was test-fired. So I think the concern that [Petitioner] had is as to "the handgun can expel . . ." So in the sentence where it states on page 3 at the end, "the handgun can expel a projectile by the action of an explosive and is therefore a 'firearm' as defined under federal law," maybe to allay any concerns, obviously the firearm is not able to do so but can be readily made available to do so, it still qualifies as a "firearm" under federal law. Maybe what we can add here is "the handgun can expel or can or readily be made to expel a projectile by the action of an explosive."

Court: I mean, is there a question about whether this firearm was operational?

[Petitioner's Counsel]: I think the main issue, Judge, is that in reviewing some of the documents, [Petitioner] had noted that there—while there is an examination of the firearm itself, there is not a test-fire that we have. So we have actually—not saying it hasn't been done. We haven't received that document. . . .

5

> Court: First of all, [AUSA] Dunkel, do you have such a report that you can provide to the defendant?
>
> [AUSA] Dunkel: I'm looking through my paper file right now. I do believe that that had been provided. I don't believe it was available in that initial batch of discovery and so that's why I'm having a little bit of trouble locating it in my file. But the same laboratory report that determined that the firearm was obliterated, it had only five of the seven serial numbers visible, was the same firearm that – or the firearm lab that determined that it could be test-fired and did test-fire.
>
> Court: [Petitioner's counsel], do you happen to have that report with you?
>
> [Petitioner's Counsel]: I have not seen that, no. I did see the fact that it had been obliterated, but it's -- I would note, too, that the five of seven numbers actually -- when were viewed this we had no concern that was correct, but I had actually never seen that document.
>
> Court: Okay. Well, let's just take a minute and see if we can locate that.
>
> [AUSA] Dunkel: It does not appear I have that in my paper files, but I do know that I reviewed that and saw that as I was preparing the plea agreement on the superseding information, so I know it exists. It should be easily accessible upstairs in my office, if the Court would prefer me to go get a copy.
>
> Court: Well, [Petitioner], would that make you more comfortable if you were able to see that report?
>
> [Petitioner]: Yes ma'am.
>
> Court [to AUSA Dunkel]: All right. Why don't you see if you can locate that…

Crim. ECF No. 164 at 19-25.

After the AUSA produced the document in question, the following exchange occurred:

> Court: Just for the record, [AUSA] Dunkel you were able to locate the report you were describing?
>
> [AUSA] Dunkel: Yes, Your Honor. Thank you for allowing me that time.

6

>Court: And you all take whatever time you need to review it.
>
>[Petitioner's Counsel]: I am just reviewing it really quickly just to make sure we are all satisfied. Thank you, Judge.
>
>Court: Take as much time as you need to review it.
>
>[Petitioner's Counsel]: Thank you, Judge. We had an opportunity to review that, and I appreciate the government getting it to us so quickly. I believe we were able to proceed originally without any edits to the plea agreement.
>
>Court: All right. And, [Petitioner], I'm sorry that you had not seen that report previously, and I'm glad that you -- that you brought it up so that you could see the report. Now that you have seen that further report, is there anything about this statement of facts that you disagree with, or think is untrue?
>
>[Petitioner]: No, ma'am.
>
>Court: . . . Did you, in fact, possess that firearm that had been in your car?
>
>[Petitioner]: Yes ma'am.
>
>Court: All right. And did you know that the firearm, in fact, had an obliterated serial number?
>
>[Petitioner]: Yes ma'am.
>
>Court: All right. And has this -- are you acknowledging that that firearm was, in fact, manufactured outside the State of Missouri and, therefore, had to have traveled across state lines either before or during the time you possessed it?
>
>[Petitioner]: Yes ma'am.

*Id*. at 25-26.

At the conclusion of the hearing, the Court found that Petitioner's plea was knowing, voluntary, and intelligent. The Court thus accepted Petitioner's plea and on October 3, 2023, the Court sentenced Petitioner to 60 months' imprisonment at the recommendation of both parties.

As set forth in paragraphs 101 and 102 of the Presentence Investigation Report, Petitioner's sentencing guideline range was 110 to 137 months' imprisonment but was capped at 60 months by the statutory maximum. Had Petitioner been convicted of the charge in the original indictment, he would have been subject to a 10-year statutory maximum and a sentencing guidelines range of 110 to 120 months' imprisonment. Crim. ECF No. 140.

**Motion to Vacate**

As noted above, in his current motion under § 2255, Petitioner argues that plea counsel was ineffective for advising Petitioner to plead guilty despite the fact that the firearm at issue was (1) not test fired prior to the criminal complaint and indictment, and (2) that this evidence was not turned over to Petitioner during the plea negotiation. Petitioner alleges prosecutorial misconduct based on similar grounds, arguing that the prosecutor violated his due process and speedy trial rights by (1) failing to turn over discovery material related to the test fire and (2) providing a misleading affidavit in support of the criminal complaint, which stated that the handgun was test fired and confirmed to operate as designed. The Government responds that each claim is without merit and that the prosecutorial misconduct claims have been waived and defaulted.

## DISCUSSION

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

8

law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  An ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal.  *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006).

**<u>Ineffective Assistance of Counsel</u>**

To establish ineffective assistance of counsel, "the petitioner must show 'counsel's representation fell below an objective standard of reasonableness' and 'that such deficient performance prejudiced' the defense." *Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  Prejudice in the context of a guilty plea requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044-45 (8th Cir. 2019).  "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial . . . . This assessment, in turn will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial." *Hill*, 474 U.S.at 59.

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Meza-Lopez v*, 929 F.3d at 1045 (citation omitted).  "Instead, judges should look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id*.  In

9

particular, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017).

Petitioner has not demonstrated ineffective assistance of counsel. Petitioner's first claim—that the gun was not test fired prior to the indictment—fails as a factual matter. In his motion to vacate, set aside, or correct his sentence, Petitioner claims that the government "failed to… request for the weapon to be test fired" and that instead, "[t]he weapon was test fired 3 years and 3 months later." ECF No. 1. Responding to Petitioner's motion, the Government contends that the firearm was test fired on February 25, 2020. The initial test fire was conducted to retrieve a casing to be entered into the National Integrated Ballistic Information Network ("NIBIN"). In support of this contention, the Government references the original affidavit by Captain Jason Dunn from the Missouri Police Department stating that the gun was test fired. Additionally, the Government offers the NIBIN form produced when the firearm in question was entered into the system. ECF No. 20-1. The report is signed by two firearm examiners and dated February 25, 2020—two days after the shooting occurred. Based on this evidence, as well as Petitioner's lack of any contrary evidence, the Court is convinced that the firearm was test fired shortly after the incident on February 25, 2020, as nothing in the original criminal docket or this docket contradicts this evidence.

The Government also contends that, in anticipation of trial, the Government requested a ballistic analysis of the firearm and, in connection with that analysis, ordered a second test fire, which was conducted on May 17, 2023. The Government has

10

produced a copy of that second test-fire report, dated May 19, 2023, as another attachment to its response to the motion to vacate.  ECF No. 20-2.  According to the Government, this May 19, 2023 report of the second test fire was the report that Petitioner and his counsel reviewed during the plea colloquy described above.

In his current motion to vacate, Petitioner appears to mistake the late disclosure of the second test fire as evidence that no other test fire occurred.  Based on the evidence produced by the Government, and the lack of any contrary evidence from Petitioner, Petitioner's argument is factually incorrect.  That Petitioner was shown the second test-fire report rather than the first does not change the analysis.  The facts alleged in the complaint affidavit were true.  At best, Petitioner can complain that he only saw the second report.  But there is no allegation that the condition of the firearm changed from the first test to the second.  Thus, Petitioner was shown evidence that the firearm was test fired and determined to expel a projectile, and Petitioner cannot have been prejudiced by seeing only the second test-fire report prior to his plea.

Further, even assuming that Petitioner were factually correct that the firearm was not test fired prior to the criminal complaint, his claim for ineffective assistance of counsel would still fail.  Assuming that the firearm was not test fired until May 2023 *and* that Petitioner's counsel somehow fell below some objectively reasonable standard by failing to uncover that fact, Petitioner cannot show prejudice.  Again, there is nothing ot suggest that the condition of the firearm changed from the time of its seizure.

As previously stated, ineffective assistance of counsel requires both deficient performance by an attorney and prejudice to the defendant. "Prejudice in the context of a

11

guilty plea requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" and this inquiry will "depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial." *Hill*, 474 U.S.at 59.

Petitioner cannot show how the alleged failure to test fire the weapon would have resulted in a reasonable probability that he would not have pled guilty. As outlined earlier, Petitioner raised the issue of test firing during the change-of-plea hearing. Petitioner and his counsel claimed that they had not received a test-fire report. In response, the Court required the Government to produce the test-firing report, and the Government promptly produced the May 2023 test-fire report. Petitioner and his counsel were then given as much time as they needed to review that report, after which Petitioner still pled guilty, without raising any concern regarding the late disclosure of the report or any concern that gun was not test fired earlier. Moreover, Petitioner received a very substantial benefit as a result of his plea in that his sentence was capped at 60 months' imprisonment rather than the original charge carrying a 120-month maximum and a guidelines range of 110-120 months. Petitioner's current assertion that he would not have pled guilty had he known the gun was not test fired earlier or had the May 2023 report been earlier produced is therefore directly contradicted by the record.

Further, the Petitioner cannot show that any alleged failure to test fire at an earlier date would have likely changed the outcome had he decided to go to trial. In addition to Petitioner failing to contradict the Government's showing that the gun was test fired on February 25, 2020, it is unclear how this test fire (or lack thereof) would be determinative

12

of a conviction under 18 U.S.C. 922(k), which makes it illegal to transport, ship, or receive in interstate commerce any firearm which has an obliterated serial number.

Because the test fire has no relationship with the serial number or interstate commerce connection, the only possible relevance this fact could have is if Petitioner is alleging that the firearm somehow was not functional and therefore did not qualify as a firearm under the statute. This argument fails, as an inability to fire would not necessarily remove the weapon from the purview of the statute. The Eighth Circuit has held that to be convicted under 18 U.S.C. § 922, the evidence must prove only that the weapon in question meets the definition of firearm under 18 U.S.C. § 921(a)(3). *United States v. McCoy*, 70 F.4th 498, 501 (8th Cir. 2023). The court noted that a firearm is "any weapon … which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." *Id.* (citing 18 U.S.C. § 921(a)(3)). The court made clear that "[p]roof that a firearm was operable is not required." *Id*. (citing *United States v. Hardin*, 889 F.3d 945, 948-9 (8th Cir. 2018)). Defense counsel implicitly recognized this when he suggested the language perhaps be changed to add the alternative language that the firearm could readily be made to expel a projectile.

In conclusion, Petitioner's ineffective assistance of counsel claim fails factually, as he has offered no evidence to contradict the Government's showing that the gun was test fired on February 25, 2020, prior to the initial complaint and indictment. Additionally, Petitioner's claims that he would not have pled guilty had he been made aware of this purported (but untrue) fact or had he received either test-fire report earlier are

13

contradicted by his statements at the change-of-plea hearing and unsupported by the record. Thus, Petitioner's claim of ineffective assistance will be denied.

**Prosecutorial Misconduct**

With respect to Petitioner's remaining claims, "[t]he test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's . . . conduct must in fact have been improper, and (2) such . . . conduct must have prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." *United States v. Rodriguez*, 612 F.3d 1049, 1055-56 (8th Cir. 2010). In the context of a plea agreement, the second factor becomes a question of whether the defendant was prejudiced such to deprive him of a fair proceeding. *United States v. Dieatrick*, 189 F. App'x 581, 582 (8th Cir. 2006).

Petitioner cannot prove prosecutorial misconduct. Petitioner alleges that the prosecution failed to turn over exculpatory evidence by not disclosing that the firearm was not test fired earlier than May of 2023, and providing a misleading affidavit in support of the criminal complaint dated April 27, 2020, which affirmed that the gun was test fired by that date. For the reasons stated above, these claims fail as a factual matter and the test-fire evidence does not constitute exculpatory evidence.

And as with his ineffective assistance claims, Petitioner's prosecutorial misconduct claims fail to demonstrate prejudice even assuming his allegations are true. Again, there is no evidence that the condition of the firearm changed between the two test fires. Further, Petitioner is not claiming that the firearm was not functional; he is only claiming that it was not test fired. As was the case for the ineffective assistance of counsel claims, Petitioner has failed to show prejudice. Even assuming that Petitioner is

14

alleging that the claimed failure to test fire was due to the firearm's inability to function, as noted above, this is not a requirement for a conviction under 18 U.S.C. § 922(k). Accordingly, there was no improper conduct and no prejudice to Petitioner.

To the extent Petitioner is challenging the late disclosure of the May 2023 test-fire report, the Court agrees with the Government that any discovery violation in this respect did not prejudice Petitioner, as he was given time to review the report before entering his plea. And even if he had not pled guilty, the late disclosure would not have impacted Petitioner's right to a fair trial, especially given that no trial date was set and the Court would have permitted any continuance needed to allow him to review and prepare to respond to the test-fire reports. For all these reasons, Petitioner's claims of prosecutorial misconduct are without merit.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Quintin Davis's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of January, 2026.